**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Robert J. Chaput, | ) | Case No. 14-10003 (MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Robert J. Chaput, | ) | Adv. P. No. 14-1001 (MFW) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John Cianci, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Before the Court is the Motion of Robert J. Chaput (the
"Plaintiff") for Summary Judgment on his Amended Complaint
against John Cianci (the "Defendant").  For the reasons set forth
below, the Court will enter judgment in favor of the Plaintiff
and against the Defendant on Counts I and III of the Amended
Complaint declaring the Lease Agreement dated August 8, 2011,
null and void.  The Court finds, however, that there are material
issues of disputed fact relating to the amount of damages, if
any, that the Plaintiff has suffered as a result of the
Defendant's breach of fiduciary duties and, therefore, will hold
a further hearing to ascertain the amount of damages to which the

---

[1]  This Memorandum Opinion constitutes the findings of fact
and conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

Plaintiff is entitled.

I.   <u>BACKGROUND</u>

The Plaintiff is a 78 year old retired Lieutenant Colonel in the U.S. Army who moved to St. Croix approximately 25 years ago. The Defendant is the son of the Plaintiff's deceased wife and moved to St. Croix in 2010.  On July 26, 2011, the Plaintiff gave the Defendant a general power of attorney.  (Adv. D.I. 22 at Ex. 2.)  On or about August 8, 2011, the Defendant executed a 30 year lease on behalf of himself and the Plaintiff (the "Lease Agreement"), which purported to lease to the Defendant six properties owned by the Plaintiff, to give the Defendant authority to collect rents and make repairs, and to give the Defendant a right of first refusal and option to purchase any of the properties with a $750,000 credit against any purchase price. (Adv. D.I. 22 at Exs. 1 & 5.)  On April 13, 2012, the Plaintiff revoked the Defendant's power of attorney.  (Adv. D.I. 22 at Ex. 4.)

The Plaintiff filed an action for forcible entry, detainer, and restitution of premises (the "FED action") against the Defendant in the Superior Court of the Virgin Islands.  The Defendant filed a motion to dismiss that action (Adv. D.I. 2 at Ex. 5.) and also filed an action to have a guardian appointed for the Plaintiff, contending that he was not competent to handle his

2

financial affairs.  The FED action was stayed pending the outcome of the guardianship action.  In May, 2014, the Superior Court found the Plaintiff to be competent and, accordingly, dismissed the guardianship action.  (Adv. D.I. 35 at Ex. 3.)  Later, on January 26, 2015, the Superior Court dismissed the FED action with prejudice, on the representation of counsel for the Plaintiff that the Defendant had moved out of the premises. (Adv. D.I. 70 at Ex. 28.)

The Plaintiff filed a chapter 13 petition on February 6, 2014.  On March 25, 2014, the Plaintiff commenced this adversary proceeding by filing a complaint against the Defendant.  The Plaintiff filed an amended complaint on May 22, 2014.  (Adv. D.I. 22.)  The amended complaint seeks to have the lease declared null and void because the Defendant breached his fiduciary duties of loyalty and care owed to the Plaintiff by executing the agreement on behalf of himself and the Plaintiff.  The amended complaint also seeks damages for the breach of fiduciary duty.  Finally, the amended complaint seeks to have the lease declared void ab initio because it was not witnessed by two people as required by Virgin Islands law.  V.I. Code Ann. tit. 28, § 42.

The Defendant is proceeding pro se.  After several attempts at responding to the complaint and amended complaint, the Defendant filed an answer to the amended complaint which stated that he either lacked knowledge or invoked his Fifth Amendment

3

right against self incrimination.  He also raised several "defenses" to the action.  (Adv. D.I. 31.)

The Plaintiff filed a Motion for Summary Judgment, supported by exhibits and a declaration, on August 29, 2014.  (Adv. D.I. 35.)  Again, after several attempts and ancillary motions, the Defendant responded to the Motion on February 26, 2015.  (Adv. D.I. 70.)

## II.  JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334(b) & 157(b)(1). Although the claims are based on Virgin Islands law, the Court may enter final judgment on the merits without the parties' consent because the requirements of Article III of the U.S. Constitution do not extend to U.S. territories.  See Stern v. Marshall, 131 S. Ct. 2594, 2620 (2011)(finding that a bankruptcy court lacked authority under Article III of the U.S. Constitution to enter final judgment on a state law counterclaim); Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 64-65 (1982)(plurality opinion)(noting that the Supreme Court has upheld the authority of non-Article III courts in U.S. territories "from the earliest days of the Republic"); See also American Ins. Co. v. Canter, 1 Pet. 511, 7 L.Ed. 242 (1828)(concluding that because Article IV of the Constitution

4

gave Congress alone the complete power to govern the territories, it could create courts for those territories that were not in conformity with Article III.)

III. <u>DISCUSSION</u>

In his response to the Plaintiff's Motion for Summary Judgment, the Defendant raises numerous issues which are irrelevant to the Motion.  For example, the Defendant continues to argue that the Plaintiff has failed to list all of his property and income on his bankruptcy schedules.  (Adv. D.I. 70 at pp. 2-4.)  While this may be relevant to the Chapter 13 Trustee's Motion to dismiss the main bankruptcy case, it is only tangentially relevant to the issues raised in the adversary proceeding.[2]  Therefore, the Court finds that the "defenses" raised by the Defendant do not preclude consideration of the Plaintiff's Motion for Summary Judgment.

A.    <u>Standard of Review</u>

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

_____

[2]    Incredibly, the Defendant contends that this may be relevant because the Defendant had access to the Plaintiff's accounts and may have removed those funds for the Defendant's breach of fiduciary duties.  (<u>Id.</u> at 5.)  This may indeed be relevant to the issue of damages; however, the Court concludes below that summary judgment on that issue is not warranted at this time.

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3]

In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Magner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981); Aristide v. United Dominion Constructors, Inc., Civ. No. 1993-194, 1994 WL 371406 at *1 (D.V.I. June 28, 1994). If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, the Court must enter judgment in the movant's favor. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anchorage Assocs. v. VI Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990); Skopbank v. Allen-Williams Corp., 7 F. Supp. 2d 601, 605 (D.V.I. 1998).

B.   Count I Breach of Fiduciary Duty

The District Court has recently noted that

to establish a claim for breach of a fiduciary duty:
(1) there must be a fiduciary relationship, (2) the
fiduciary must have breached its duty imposed by such
relationship, (3) the plaintiff must have been harmed,

---

[3] Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.

and (4) the fiduciary's breach must be a proximate
cause of the plaintiff's harm.

<u>Watts v. Blake-Coleman</u>, Civil 2011-61, 2012 WL 1080323, at *4
(D.V.I. March 29, 2012).

In this case the Plaintiff contends that a fiduciary
relationship arose when the Plaintiff gave the Defendant a
general power of attorney.  (Adv. D.I. 22 at Ex. 2.)  The
Defendant has not contested this.

The Court concludes that the general power of attorney did
create a fiduciary relationship between the Plaintiff and the
Defendant.  <u>See, e.g.</u>, <u>Grubb v. Grubb</u>, 630 S.E.2d 746, 751 (Va.
2006) (attorney in fact is fiduciary for principal); <u>Crosby v.
Luehrs</u>, 669 N.W.2d 635, 646 (Neb. 2003) (same); <u>In re Susser
Estate</u>, 657 N.W.2d 147, 150 (Mich. Ct. App. 2002) ("[T]hat an
attorney in fact acting under the authority of a general power of
attorney is in a fiduciary relationship with the principal [is]
generally accepted without question."); <u>Schock v. Nash</u>, 732 A.2d
217, 224-26 (Del. 1999) (finding that a durable power of attorney
created a fiduciary relationship, which included the duty of
loyalty); <u>Brown v. Villano</u>, 716 A.2d 111, 113 (Conn. App. Ct.
1998) (concluding that "[t]he power of attorney created a
principal-agent relationship between William and Ruth, and agency
is a fiduciary relationship."); <u>Priestley v. Priestley</u>, 949
S.W.2d 594, 596-98 (Ky. 1997) (recognizing that an attorney in
fact was a fiduciary); <u>King v. Bankerd</u>, 492 A.2d 608, 613 (Md.

1985) (same); <u>Gagnon v. Coombs</u>, 654 N.E.2d 54, 60 (Mass. App. Ct. 1995) (holding that power of attorney created fiduciary relationship).

Consequently, the Defendant owed a duty of loyalty to the Plaintiff and had the obligation to act in the best interest of the Plaintiff. <u>Schock v. Nash</u>, 732 A.2d at 224. A breach of the duty of loyalty is established if the fiduciary was on both sides of the transaction and the transaction was not entirely fair to the party to whom he owed a fiduciary duty. <u>Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.)</u>, 405 B.R. 527, 540 (Bankr. D. Del. 2009). If the Defendant was on both sides of the transaction, the burden of proof is on the Defendant to prove that the transaction was entirely fair. <u>Miller v. McCown De Leeuw & Co., Inc. (In re The Brown Schools)</u>, 386 B.R. 37, 47 (Bankr. D. Del. 2008). The "entire fairness" standard is Delaware's most onerous standard and requires that the Defendant prove that the transaction was the product of both fair dealing and fair price. <u>In re Trados Inc. S'holder Litig.</u>, 73 A.3d 17, 45 (Del. Ch. 2013); <u>Official Comm. of Unsecured Creditors v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)</u>, 444 B.R. 51, 106 (Bankr. D. Del. 2010). Not even an honest belief that the transaction was entirely fair is sufficient to establish entire fairness — the transaction itself must be objectively fair, independent of the

fiduciary's belief.  Trados, 73 A.3d at 45.

In this case, the Lease Agreement establishes that the Defendant was on both sides of the transaction: he was the Lessee and acted as the agent for the Plaintiff as Lessor.  Therefore, the burden was on the Defendant to establish that the Lease Agreement was entirely fair to the Plaintiff.  This the Defendant has failed to do.  No evidence was presented to establish that it was fair for the Plaintiff (1) to agree to lease the 3D Estate St. John property to the Defendant at a rent that remained the same for the thirty years of the lease (subject only to adjustment for increased property taxes or if the Defendant ran a commercial enterprise), (2) to rent the other properties at whatever rent amount the Defendant was able to collect in sub-rent (less repairs), (3) to grant the Defendant (for no consideration) a right of first refusal and option to purchase the six properties at an unspecified price, or (4) to allow the Defendant a $750,000 credit to apply against any price he paid for the properties.  (Adv. D.I. 22 at Ex. 1.)  The Court concludes that the Lease Agreement was unfair to the Plaintiff and that the Defendant breached his fiduciary duty to the Plaintiff by entering into that agreement on his behalf.

Under common law, transactions which violate the fiduciary duty of loyalty are void.  See, e.g., Schock, 732 A.2d at 225 ("At common law, transactions which violated the fiduciary duty

9

of loyalty were void.  Under current Delaware law, these
transactions are voidable at the behest of the beneficiary.")
Thus, the Court concludes that the Lease Agreement is void and
will, therefore, enter an order granting judgment in favor of the
Plaintiff on Count I.

   C.   Count II Damages for Breach of Fiduciary Duty

   In Count II the Plaintiff seeks damages for the Defendant's
breach of his fiduciary duty.  However, the Plaintiff does not
quantify what his damages are.  He simply states that "The
Defendant has prevented the Plaintiff from collecting any income
from the property causing extreme financial hardship which has
also caused the Plaintiff to face foreclosure and seek Bankruptcy
relief."  (Adv. D.I. 35 at p. 7.)

   The Defendant contends that the Plaintiff's financial
difficulties are all of his own doing.  (Adv. D.I. 70 at p. 14.)

   The Court concludes that there are disputed issues of
material fact with respect to the damages claim.  For example,
the Defendant attached to his Response to the Motion for Summary
Judgment various documents which purport to be accountings of the
rents he collected and the expenses of the properties that he
paid.  (Id. at Exs. 27 & 31.)  Those documents are, however,
internally inconsistent[4] and the Plaintiff contends that the

---

   [4]  For example, Exhibit 27 states that WAPA paid by the
Defendant for the properties totaled $8,189.26 but the detail
provided totals only $2,365.  (Id. at Ex. 27.)

10

Defendant has never properly accounted for all funds he received. Accordingly, the Court concludes that summary judgment on the damages issues is not warranted.

D.    <u>Count III Failure to Have Requisite Witnesses</u>

The Plaintiff also contends that the Lease Agreement is null and void because the Defendant did not have two uninterested witnesses sign it as required by Virgin Islands law.  V.I. Code Ann. tit. 28, § 42 (any document purporting to create an interest in real property must be attested to by two uninterested parties affixing their signature thereto.)

The Defendant argues that the Lease Agreement does not purport to convey an interest in real estate and was not recorded as such.  Therefore, he contends that it is still valid as a contract.

The Court agrees with the Plaintiff.  Section 42(a) states that deeds executed in the Virgin Islands "of lands or any interest in lands therein shall be executed in the presence of two witnesses."  A leasehold interest is an interest in land and, therefore, a deed purporting to convey a leasehold interest is invalid unless signed by two witnesses.  <u>See, e.g.</u>, <u>Cataret Savings Bank v. Pelican Beach Props., Ltd.</u>, Civ. No. 89-296, 1992 WL 209614 at *5 (D.V.I. August 14, 1992) (finding that the term "Deed" in Sections 42(a) and (b) "necessarily and obviously includes every interest in land from ownership in fee simple to a

mortgage to a leasehold.")  Because the Lease Agreement did not
have the required signature of two witnesses, the Court concludes
that the Lease Agreement is null and void.  The Court will,
therefore, enter judgment in favor of the Plaintiff and against
the Defendant on Count III.

IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court will enter judgment
in favor of the Plaintiff and against the Defendant on Counts I
and III of the Amended Complaint.  A trial on the damages
asserted in Count II will be held at a date and time to be set
by the Court at the status hearing to be held in this case on
May 14, 2015, at 10:00 a.m.  An appropriate order is attached.

Dated: April 16, 2015                BY THE COURT:

                                     Mary F. Walrath
                                     United States Bankruptcy Judge